# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL J. KEEHAN, | ) | CASE NO. 5:15-cv-1236 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| CERTECH, INC., et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

This matter is before the Court on the motion of plaintiff Daniel J. Keehan ("plaintiff" or "Keehan") to remand this case to the Summit County Court of Common Pleas. (Doc. No. 8 ["Mot."].) Defendants have opposed the motion (Doc. No. 10 ["Opp'n"]), and plaintiff has replied (Doc. No. 12 ["Reply"]). For the reasons that follow, plaintiff's motion to remand is granted.

## I. BACKGROUND

Plaintiff filed his complaint in the Summit County Court of Common Pleas alleging violation of Ohio's whistleblower statute, and wrongful discharge in violation of public policy, against both corporate and individual defendants. (Doc. No. 1-2 ["Compl."].) Plaintiff was employed by the "Morgan Defendants" as a "general manager" of defendants' facility in Twinsburg, Ohio. (Compl. ¶ 16.) Plaintiff collectively defines defendants Certech, Inc., Morgan Advanced Ceramic, Inc., and Morgan Advanced Materials, PLC, as the "Morgan Defendants." (Compl. ¶ 5.).

Plaintiff alleges that the Morgan Defendants had a contractual relationship with Flexible Staffing to provide temporary workers for the labor needs of the Morgan Defendants. (Compl. ¶¶ 17, 19.) The complaint is replete with allegations regarding illegal conduct with respect to the Morgan Defendants' relationship with Flexible Staffing, including but not limited to, kickbacks (Compl. ¶ 35), payment "under the table," altered W-2's to obtain government subsidies, and employment of felons who were not permitted to work for the Morgan Defendants (Compl. ¶¶ 44-45).

In addition, plaintiff "properly notified the Morgan Defendants . . . on several occasions that nonconforming airline parts were being shipped to a client in Mexico, and that the nonconformity was likely to cause an imminent risk of harm to persons and a hazard to public health and safety[,]" but "[n]o investigation was initiated by the Morgan Defendants . . . as a result of any notice provided by Plaintiff." (Compl. ¶¶ 55-56.).

Plaintiff alleges that on April 11, 2014, he informed Kristine Waggoner ("Waggoner"), the Vice President of Human Resources of Morgan Advanced Ceramics, of his concerns regarding Flexible Staffing. (Compl. ¶ 53.) Plaintiff further "felt he needed to set the record straight as to what was happening at the Twinsburg plant" and, through his attorney on August 19, 2014, plaintiff sent written notice to John Stang ("Stang"), the "President North America" of defendant Morgan Advanced Materials with oversight of the Morgan Defendants. (Compl. ¶¶ 7, 57.) Plaintiff also alleges that he met with Lynsey Poulton ("Poulton") on November 3, 2014, and explained to her the above-described issues with respect to Flexible Staffing and shipment of nonconforming airline

parts. (Compl. ¶¶ 61-62.) Poulton is the "Responsible Business Program and Risk Manager" for the Morgan Defendants. (Compl. ¶ 6.).

Stang, Poulton, and Nicholas Korenowski ("Korenowski") are the individual defendants named in this action. Korenowski became plaintiff's supervisor on July 7, 2014 (Opp'n at 93[1]), "and had the authority to terminate the employment, discipline, or otherwise affect the terms and conditions of Plaintiff's employment on or about November 19, 2014." (Compl. ¶ 5.).

According to plaintiff he was first told by the Morgan Defendants that he would be promoted to Director of Operations, though plaintiff does not specify who provided that information. (Compl. ¶ 58.) "Shortly thereafter, Plaintiff was informed by Korenowski, who was the Vice President and General Manager of Certech, Inc., that the Morgan Defendants . . . were going to demote the Plaintiff instead of promote him and that they planned to remove him from any leadership position." (Compl. ¶ 60.) Plaintiff alleges that Stang, Poulton and Korenowski were aware that plaintiff had raised complaints orally and in writing regarding alleged issues with respect to Flexible Staffing and nonconforming aircraft parts. (Compl. ¶¶ 64-67.) Finally, he alleges that Korenowski informed him on November 19, 2014, that his employment with the Morgan Defendants was terminated. (Compl. ¶ 68.).

---

[1] All references to page numbers are to the Court's page identification numbers generated by the Court's electronic filing system.

For his first and second causes of action, plaintiff alleges that Stang, Poulton, Korenowski, and the Morgan Defendants terminated his employment in violation of Ohio Rev. Code § 4113.52 due to his complaints regarding issues with Flexible Staffing and the sale of non-conforming airline parts.  (Compl. ¶¶ 72-120.) In his third and fourth causes of action, plaintiff alleges that he was wrongfully terminated for these same reasons, in violation of public policy, by Stang, Korenowski, and Poulton (Compl. ¶¶ 128-129), and the Morgan Defendants. (*See* Compl. ¶¶ 121-155.).

Defendants removed this action on the basis of the Court's diversity jurisdiction. 28 U.S.C. § 1332. (Doc. No. 1 (Notice of Removal ["Notice"]).) Defendants recognize that defendant Korenowski and plaintiff are both citizens of Ohio, but claim that plaintiff does not have a colorable legal claim against the individual defendants, including Korenowski, under Ohio's whistleblower statute—Ohio Rev. Code. § 4113.52, or under Ohio law for wrongful discharge in violation of public policy. (Notice ¶¶ 14-19.) Lacking a colorable state law claim against Korenowski, defendants claim that Korenowski was fraudulently joined. (Notice ¶ 21.).

## II. DISCUSSION

### A. Standard on Motion to Remand

A defendant may remove to federal court only state court actions that originally could have been filed in federal court. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987); 28 U.S.C. § 1441(a). As a court of limited jurisdiction, a federal district court must proceed cautiously in determining that it has subject matter jurisdiction. *Musson Theatrical v. Fed. Express Corp.,* 89 F.3d 1244,

1252 (6th Cir. 1996). The court must give "due regard" to the power reserved to the states under the Constitution to provide for the determination of controversies in the state courts. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941). Accordingly, removal statutes must be construed strictly to promote comity and preserve jurisdictional boundaries between state and federal courts. *Alexander v. Elec. Data Sys. Corp.,* 13 F.3d 940, 949 (6th Cir. 1994). "[A]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. Am. Tobacco Co.,* 183 F.3d 488, 493 (6th Cir. 1999). The removing defendant bears the burden of proving the court's jurisdiction. *See Rogers v. Wal–Mart Stores, Inc.,* 230 F.3d 868, 871 (6th Cir. 2000).

Defendants' basis for removal in this case is federal diversity jurisdiction. 28 U.S.C. § 1332. When an action is removed on diversity, the court must determine whether complete diversity exists at the time of removal. "Indeed, 'diversity jurisdiction attaches only when all parties on one side of the litigation are of a different citizenship from all parties on the other side.'" *Coyne,* 183 F.3d at 492 (quoting *SHR Ltd. P'ship v. Braun,* 888 F.2d 455, 456 (6th Cir. 1989)). However, "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Id.* at 493 (citing *Alexander,* 13 F.3d at 949).

To establish fraudulent joinder, the removing party "must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Id.* at 493.

[I]f there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court. The district court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the non-removing party. All doubts as to the propriety of removal are resolved in favor of remand.

*Id.* (internal quotation marks and citation omitted)*; Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.,* No. 11–3601, 2013 WL 216026, at * 3 (6th Cir. Jan. 22, 2013) (quoting *Coyne*, 183 F.3d at 492-93).

"The combination of the 'colorable' standard with the requirement that all ambiguities of state law are to be resolved in favor of the non-removing party presents a significant hurdle. A defendant attempting to prove fraudulent joinder thus faces a particularly heavy burden." *Kent State,* 2013 WL 216026, at *4.

In removing this action, defendants claim that Korenowski was fraudulently joined because plaintiff has no legal claim against an individual supervisor: (1) under Ohio's whistleblower statute, Ohio Rev. Code § 4113.52 (Notice ¶ 15); or (2) under Ohio law for wrongful discharge in violation of public policy (Notice ¶ 16).

**B. Ohio Rev. Code § 4113.52 – Ohio's Whistleblower Statute**

Plaintiff's first claim against Korenowski (first cause of action) alleges a violation of Ohio's whistleblower statute—Ohio Rev. Code § 4113.52. (Compl. ¶¶ 72-94.) Ohio's whistleblower statute provides a procedure for an employee to follow if the employee becomes aware of a violation of any state or federal statute, ordinance or regulation, work rule or company policy, that the employee reasonably believes is a criminal offense, or is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, or is a felony. That procedure begins with oral

6

notification of the employee's supervisor, followed by a written report. *See* Ohio Rev. Code § 4113.52(A). The whistleblower statute prohibits an employer from taking disciplinary or retaliatory action against an employee for making a report authorized by § 4113.52(A). *See* Ohio Rev. Code § 4113.52(B).

In his motion to remand, plaintiff contends that he has stated a colorable claim against Korenowski because individual supervisors are agents of employers under Ohio's whistleblower statute, and are liable under the statute. Defendants take the opposite view, citing *Armstrong v. Trans-Service Logistics, Inc.,* No. 04CA015, 2005 WL 1301691 (Ohio Ct. App. May 27, 2005), and posit that plaintiff has no colorable claim under the whistleblower statute against Korenowski individually.

In *Armstrong*, plaintiff alleged that he was terminated by defendant for reporting to authorities that meat was being transported at too high a temperature. Plaintiff sued his employer and individual supervisors and officers under Ohio Rev. Code § 4113.52, and under a common law theory of wrongful discharge in violation of public policy. The individual defendants moved for summary judgment, and, concluding that there was no individual liability under either Ohio's whistleblower statute or for wrongful discharge, the trial court granted the motion.

On appeal, appellant argued that an individual supervisor can be liable under the whistleblower statute pursuant to the same rationale utilized by the Ohio Supreme Court in holding that a supervisor can be jointly and severally liable with the employer for discriminatory conduct found to be in violation of Ohio Rev. Code Chapter 4112. The appellate court in *Armstrong* undertook an extensive analysis comparing the

definition of an employer under Ohio Rev. Code § 4112.01(A)(2), Ohio Rev. Code § 4113.52, and Title VII, and also analyzing the remedies available under Ohio Rev. Code § 4113.52. *Armstrong,* 2005 WL 1301691, at *5-6. Based upon this analysis, the court in *Armstrong* concluded that the reference to "agents" of employers in the whistleblower statute refers to respondeat superior liability of the employer, and does not include individual liability:

> R.C. 4133.52, the "whistleblower" statute, creates liability for the "employer," i.e. the corporate entity. However, a strict and literal reading of the statute, as well as the case law from the Ohio Supreme Court, foreclose finding an individual supervisor liable for wrongful discharge under the statute.

*Id*. at *6.

Plaintiff does not directly address the holding in *Armstrong*, but cites *Atram v. Star Tool & Die Corp*., 581 N.E.2d 1110 (Ohio Ct. App. 1989), and *Bowes v. Cinci. Riverfront Coliseum, Inc*., 465 N.E.2d 904 (Ohio Ct. App. 1983), in support of his position that he has asserted a colorable claim for individual liability against Korenowski under the whistleblower statute. But these cases discuss the individual liability of corporate officers in tort and do not involve Ohio's whistleblower statute.

*Armstrong* holds that there is no liability for individual supervisors under Ohio's whistleblower statute.

> As noted by the Sixth Circuit, "[w]here a state appellate court has resolved an issue to which the high court has not spoken, 'we will normally treat [such] decisions . . . as authoritative absent a strong showing that the state's highest court would decide the issue differently.'" *Swix v. Daisy Mfg. Co., Inc.,* 373 F.3d 678, 681 (6th Cir. 2004) (alterations in original) (citations omitted). A decision of a state's intermediate appellate court, "while lacking the controlling force of a decision of a state court of last resort, does serve as 'a datum for ascertaining state law which

is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Kurczi v. Eli Lilly & Co.,* 113 F.3d 1426, 1429 (6th Cir. 1997) (quoting *Ziebart Int'l Corp. v. C NA Ins. Cos.,* 78 F.3d 245 (6th Cir. 1996)).

*Kunkle v. Q-Mark, Inc.*, No. 3:13-cv-82, 2013 WL 3288398, at *5 (S.D. Ohio June 28, 2013) (alteration in original).

The Court recognizes that it is defendants' burden to establish fraudulent joinder and that ambiguities in law must be resolved in favor of plaintiff. *Coyne,* 183 F.3d at 493. That said, in the face of the *Armstrong* decision and the absence of persuasive authority that the Ohio Supreme Court would reach a contrary holding, the Court concludes, for the purpose of fraudulent joinder analysis, that plaintiff has not stated a colorable claim for individual liability against Korenowski under Ohio Rev. Code § 4113.52.

## C. Wrongful Discharge in Violation of Public Policy

Plaintiff's second claim against Korenowski (third cause of action) is for wrongful termination in violation of public policy. (Compl. ¶¶ 121-37.) With respect to this claim, plaintiff alleges that he was wrongfully terminated by the individual defendants, including Korenowski, for complaining about clear violations of public policies by the Morgan Defendants.[2]

---

[2]Plaintiff alleges that the public policies violated by defendants include the following: (1) that sales tax be levied on the sale of certain commercial goods and services pursuant to Ohio Rev. Code Chapter 5739 (Compl. ¶ 122); (2) that federal and state law require that W-2's contain accurate information regarding wages paid and taxes withheld pursuant to Title 57 of the Ohio Revised Code and Title 26 of the United States Code (Compl. ¶ 123); (3) against permitting unauthorized persons to work in the United States pursuant to 8 U.S.C. § 1324a (Compl. ¶ 124); against individual obtaining government subsidies based on fraudulent information (Compl. ¶ 125); and (4) against providing defective or nonconforming goods (airline parts) that pose a threat to public safety and risk of physical harm in violation of Ohio Rev. Code § 2307 *et seq*. (Compl. ¶¶ 126-27).

In Ohio, there is an exception to the employment-at-will doctrine where "an employee is discharged or disciplined in contravention of a clear public policy articulated in the Ohio or United States Constitution, federal or state statutes, administrative rules and regulations, or common law[.]" *Kunkle,* 2013 WL 3288398, at *1 (quoting *Dohme v. Eurand Am., Inc*., 956 N.E.2d 825, 829 (Ohio 2011) (citing *Painter v. Graley*, 639 N.E.2d 51 (Ohio 1994) and *Greeley v. Miami Valley Maint. Contractors, Inc*., 551 N.E.2d 981 (Ohio 1990))). A claim for wrongful discharge in violation of public policy is also known as a *Greeley* claim. *See Blackburn v. Am. Dental Ctrs*., 22 N.E.3d 1149, 1155 (Ohio Ct. App. 2014).

### 1. Claim against Korenowski may be available under Ohio law

Unlike with the whistleblower statute, individual supervisors may be subject to liability with respect to a tort claim for wrongful discharge in violation of public policy. *Armstrong*, 2005 WL 1301691, at *8-10 (individual liability may exist in claims for wrongful termination in violation of Ohio's public policy with respect to health and safety). Defendants cite *Arthur v. Armco, Inc*., 122 F. Supp. 2d. 876, 880 (S.D. Ohio 2000) in support of their argument that individual supervisor liability is not available under Ohio law for termination in violation of public policy. But *Arthur* was decided before *Armstrong* and defendants acknowledge the contrary holding of *Armstrong*, and that other courts in the district have recognized the possibility of individual liability in Ohio in this context. Notice ¶ 16; *see Jenkins v. Ctr. Transp., Inc*., No. 09CV525, 2010 WL 420027, at *4 (N.D. Ohio Jan. 29, 2010) (individual liability for a *Greeley* claim "at least a possibility" under Ohio law); *Praisler v. Ryder Integrated*

10

*Logistics*, 417 F. Supp. 2d 917, 919 (N.D. Ohio 2006) (Ohio law supports a claim against individual defendant); *Kunkle,* 2013 WL 3398398, at *4-5 (recognizing individual liability in Ohio for claims against individual supervisors participating in wrongful termination of employee) (citing *Arthur,* 122 F. Supp. 2d at 880, *Armstrong,* 2005 WL 1301691, at *9-10, and collecting cases).

The Ohio court of appeals in *Armstrong* has concluded that an individual supervisor may be liable under certain circumstances for wrongful discharge in violation of public policy, and there is no "strong showing" before the Court that the Ohio Supreme Court would decide the issue differently. *Kunkle,* 2013 WL 3288298, at *5. Further, to the extent there is a conflict or ambiguity in the law, it must be resolved in favor of plaintiff in the context of fraudulent joinder analysis. *Jenkins*, 2010 WL 420027, at *4 (citing *Coyne*, 183 F.3d at 493).

Defendants assert that Korenowski served as plaintiff's supervisor "for a brief period of time prior to Keehan's termination." (Opp'n at 92.) To the extent that defendants are arguing that Korenowski cannot be individually liable for wrongful discharge because he played a very limited role in plaintiff's termination, the court's decision in *Armstrong* is broadly written, and potential individual liability attaches to an individual who "actively participates or acquiesces in the discharge of an employee for reporting violations[.]" *Armstrong*, 2005 WL 1301691, at *8; *Jenkins*, 2010 WL 420027, at *4 ("*Armstrong* by its very terms does not limit liability to those who actually make the firing decision[.]") The issue of Korenowski's role and ultimate responsibility, if any, with respect to plaintiff's discharge remains to be determined in state court. This Court

11

merely notes that under existing Ohio case law, Korenowski's potential liability is not foreclosed merely because he may have supervised plaintiff for a only relatively short period of time.

Accordingly, the Court concludes, that for the purpose of fraudulent joinder analysis, plaintiff has asserted a colorable claim for individual liability against Korenowski under Ohio law.

### 2. Violation of public policy independent of whistleblower statute

Even if a claim for individual liability is available against Korenowski for wrongful discharge in violation of public policy, defendants argue that plaintiff still fails to advance a colorable claim against Korenowski for two reasons. First, defendants argue that plaintiff's public policy claim is simply a "derivative whistleblower claim" and, since there is no individual supervisor liability under the whistleblower statute, there can be no supervisor liability for a derivative public policy claim. (Opp'n at 98-99.) Defendants further argue that, even if there is individual liability under a derivative whistleblower claim, because Keehan does not allege that he followed the required procedures of the whistleblower statute with respect to an oral and written report to Korenowski, his derivative whistleblower public policy claim against Korenowski fails. (Opp'n at 101.).

"An at-will employee who is discharged or disciplined in violation of the public policy embodied in R.C. 4113.52 may maintain a common-law cause of action against the employer pursuant to *Greeley* * * * and its progeny, so long as that employee had fully complied with the statute and was subsequently discharged or disciplined."

*Blackburn,* 22 N.E.3d at 1155 (quoting *Kulch v. Structural Fibers, Inc.,* 677 N.E.2d 308 (Ohio 1997), paragraph three of the syllabus). If an employee fails to "strictly comply" with the requirements of Ohio Rev. Code § 4113.52, then the employee cannot base a *Greeley* claim on the public policy embodied in the whistleblower statute, but must identify an independent source of public policy to support the wrongful discharge claim. *Blackburn,* 22 N.E.3d at 1155 (citing *Thompson v. Gynecologic Oncology & Pelvic Surgery Assoc.,* No. 06AP–340, 2006 WL 3491738, at *14 (Ohio Ct. App. 2006); *Lesko v. Riverside Methodist Hosp.,* No. 04AP–1130, 2005 WL 1482549, at *8 (Ohio Ct. App. 2005)).

  The Court need not address or decide whether plaintiff has stated a derivative whistleblower public policy claim—that is, violation of a public policy embodied in Ohio Rev. Code § 4113.52—because, as discussed below, plaintiff has identified an independent source of public policy with respect to at least one of his claims—nonconforming aircraft parts. *Zajc v. Hycomp, Inc.*, 873 N.E.2d 337, 343 (Ohio Ct. App. 2009) (plaintiff was entitled to maintain a *Greeley* claim whether or not he complied with the requirements of Ohio's whistleblower statute) (citing *Kulch*).

  Even if plaintiff's *Greeley* claim is not grounded in Ohio's whistleblower statute, defendants argue that plaintiff still fails to assert a colorable wrongful discharge claim against Korenowski because plaintiff cannot satisfy the first two elements of a *Greeley* claim. (Opp'n at 102.).[3]

---

[3] Defendants to not challenge elements 3 and 4 of plaintiff's *Greeley* claim.

To establish a prima facie claim of wrongful discharge claim in violation of public policy, the employee must demonstrate the following four elements: (1) that there exists a clear public policy that is manifested in a state or federal constitution, statute, or administrative regulation, or in the common law (the "clarity" element), (2) that dismissal of employees under circumstances like those involved in the plaintiff's dismissal would jeopardize that public policy (the "jeopardy" element), (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the "causation" element), and (4) that the employer lacked overriding legitimate business justification for the dismissal (the "overriding justification" element). *Collins v. Rizkana,* 73 Ohio St.3d 65, 69–70, 652 N.E.2d 653 (1995). The clarity and jeopardy elements are questions of law to be decided by the court, and the causation and overriding justification elements are questions of fact to be decided by the fact finder. *Id.* at 70, 652 N.E.2d 653.

*Blackburn,* 22 N.E.3d at 1154-55; *see also Dohme*, 956 N.E.2d at 829.

### a. Clarity

According to defendants, plaintiff cannot satisfy the clarity element because he does not make specific citations to a public policy that defendants violated. Rather, defendants assert,

he makes general references to policies allegedly violated by a third party employer, Flexible Staffing. In his complaint, he broadly references the federal and state tax code without providing a specific citation. He mentions "a myriad of Ohio and Federal laws" regarding obtaining government subsidies, but fails to cite a specific provision. He mentions policy related to providing non-defective goods, but fails to cite a specific provision. Accordingly, he has failed to meet the clarity element because he only mentions general statutes and concepts rather than citation of specific provisions.

(Opp'n at 103.).

Defendants are wrong. Plaintiff has identified a specific source of public policy at least with respect to his allegation that the Morgan Defendants shipped nonconforming aircraft parts to a client—Ohio Rev. Code § 2301, *et seq.*[4] (Compl. ¶ 126 ("There is a clear public policy in providing conforming and non-defective goods, especially when a defect or nonconformity poses a significant threat to public safety and can result in and [sic] imminent risk of physical harm. For example, O.R.C. Chapter 2307, *et seq.*").) In addition, Ohio case law supports a public policy exception to the employment-at-will doctrine with respect to nonconforming aircraft parts.

In *Zajc,* plaintiff claimed that he was terminated for refusing to ship what he claimed were nonconforming aircraft parts in violation of public policy. *Zajc*, 873 N.E.2d at 339. Zajc argued that the UCC and Ohio Products Liability Act (Ohio Rev. Code Chapter 2307) established a clear public policy against the shipment of nonconforming aircraft parts. *Id.* at 342. Defendant moved for summary judgment, arguing that plaintiff could not establish the clarity or jeopardy elements of plaintiff's claim for wrongful discharge. *Id.* at 339-340. The trial court agreed with defendants and granted summary judgment.

The Ohio court of appeals reversed. In concluding that Zajc had established the clarity element of his *Greeley* claim, the appellate court reasoned that Ohio's products liability statute must be considered in relation to the federal statutory and regulatory provisions authorizing the Federal Aviation Administration ("FAA") to

---

[4] The parties extensively discuss whether plaintiff's other alleged public policy violations satisfy the clarity element. But the Court need not—and does not—decide those issues. For purposes of ruling upon plaintiff's motion to remand, the Court need only find that plaintiff asserts one colorable claim against Korenowski.

regulate the production of aircraft, and that a system must be in place to determine if aircraft parts meet design specifications. *Zajc*, 873 N.E.2d at 343. Defendant Hycomp insisted on appeal that the plaintiff failed to establish clarity because "the proffered authority is insufficient to establish a policy of *prohibiting the termination* of an employee who raises objections to the safety of the product." *Id.* at 342 (emphasis in original). But the court of appeals disagreed, finding that "Supreme Court case law clearly expanded the scope of the wrongful discharge tort so that it is not limited to situations in which the discharge violates the statute." *Id.* at 342 (citing *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 529 (2002) ("a valid *Greeley* claim is not limited to situations where the discharge violates a statute")).

In this case, plaintiff asserts a specific Ohio statute—Ohio Rev. Code § 2307 *et seq.*—that is entirely separate from the whistleblower statute, as the basis for his public policy claim with respect to the shipment of nonconforming aircraft parts by the Morgan Defendants. Further, Ohio case law supports plaintiff's claim that Ohio's products liability statute satisfies the clarity element of his public policy claim with respect to nonconforming aircraft parts. *Zajc*, 873 N.E.2d at 343 (distinguishing *Celeste v. Wiseco Piston,* No. 2004-L-073, 2005 WL 3528877 (Ohio Ct. App. Dec. 23, 2005), where plaintiff conceded underlying public policy was codified in the whistleblower statute).

Accordingly, with respect to the alleged shipment of nonconforming aircraft parts, the Court concludes that plaintiff has asserted a colorable state law claim against Korenowski with respect to the clarity element of his wrongful discharge claim.

16

### b. Jeopardy

Even if plaintiff can establish the clarity element of his *Greeley* claim, defendants argue that plaintiff cannot satisfy the jeopardy element. (Opp'n at 103-04.) The jeopardy element of a *Greeley* claim is satisfied "if there is no adequate statutory remedy available to the plaintiff." *Jenkins*, 2010 WL at 420027, at *6.

Defendants' jeopardy argument focuses entirely on plaintiff's public policy claims regarding Flexible Staffing and does not address plaintiff's public policy allegations regarding nonconforming aircraft parts. (Opp'n at 103-04.) Defendants cite *Vancoppenolle v. Sun Pharm. Indus., Inc.*, No. 3:08 CV 2797, 2013 WL 1337784 at *7 (N.D. Ohio Mar. 29, 2013), in support of their jeopardy argument. In that case, which involved the provisions of the Food, Drug, and Cosmetic Act, the court concluded that plaintiff failed to satisfy the jeopardy element.

The provisions of the Food, Drug, and Cosmetic Act, however, are not at issue in this case. Rather, plaintiff claims that he was discharged for complaining about the shipment of nonconforming aircraft parts. The Ohio court of appeals in *Zajc* concluded that the jeopardy element was satisfied with respect to a similar claim. *Zajc*, 873 N.E.2d at 343 ("[T]he termination of employees under circumstances like those involved in this matter would jeopardize public policy.").

It is defendants' burden to show that plaintiff has no state law claim against Korenowski with respect to his allegations regarding shipment of nonconforming aircraft parts by the Morgan Defendants. As to the jeopardy element, defendants have cited inapposite case law, failed to address the opinion of the Ohio court of appeals in

17

*Zajc*, and have not pointed to a statutory remedy available to plaintiff for wrongful discharge under Ohio Rev. Code § 2307, which plaintiff pleads as the source of his public policy claim. *See Jenkins*, 2010 WL at 420027, at *6; *Kunkle*, 2013 WL 3288398, at *4; *cf*. *Leininger v. Pioneer Nat'l Latex*, 875 N.E.2d 36, 44 (Ohio 2007) (jeopardy element necessary to support a common law claim is not satisfied because remedies available to employees in Ohio Rev. Code Chapter 4112 adequately protect the state's policy against age discrimination).

Therefore, the Court concludes that, for the purpose of fraudulent joinder, plaintiff has asserted a colorable claim against Korenowsi with respect to the jeopardy element of his wrongful discharge claim.

**D. Remand Analysis**

In order to survive a motion to remand in a case removed on the basis of fraudulent joinder, defendants must establish that plaintiff could not establish a cause of action against the non-diverse defendant under Ohio law. If there is a "colorable basis" upon which plaintiff may recover against the non-diverse defendant, then the action must be remanded to state court. *Coyne*, 183 F. 3d at 493. For the reasons stated above, the Court cannot conclude that plaintiff has no possibility of asserting a colorable state law claim against Korenowski. The Court must therefore conclude that Korenowski has not been fraudulently joined. Korenowski and plaintiff are both citizens of Ohio. Thus, the Court lacks federal diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, and it must be remanded to state court.

## III. CONCLUSION

For all of the foregoing reasons, plaintiff's motion to remand is granted.

This case shall be remanded to the Summit County Court of Common Pleas.

**IT IS SO ORDERED**.


Dated: December 10, 2015

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**